

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 2 6 2018

Fairhurst, CJ.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on 7-26-18

Susan Carlson

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 93995-1 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| CHRISTOPHER JOHN BLAIR, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed  JUL 2 6 2018 |

JOHNSON, J.—In this case we are asked to decide (1) whether a sentencing court may go behind the judgment and sentence and engage in statutory interpretation to determine the facial validity of a prior conviction for current sentencing purposes and (2) whether a snowmobile is a "motor vehicle" for purposes of RCW 9A.56.065. We conclude that the defendant must allege a constitutional defect on the face of a prior conviction to challenge that conviction's validity for purposes of offender score calculation in an otherwise unrelated proceeding. The trial court declined Blair's invitation to engage in statutory

construction here and counted two prior convictions for taking a motor vehicle.

The Court of Appeals agreed with the trial court, and we affirm.[1]

FACTS AND PROCEDURAL HISTORY

The State charged Christopher Blair in Spokane County Superior Court with one count of theft of a motor vehicle, a Ford truck, that Blair purportedly stole on or about October 28, 2011. Pursuant to that charge, he entered a drug court personal recovery program. Blair was terminated from the program on September 8, 2015. According to the record, Blair has five prior felony convictions in Washington, including second degree theft, second degree burglary, possession of a stolen vehicle, and two counts of theft of a motor vehicle at issue here. At sentencing, Blair argued for a "downward departure [from] the standard range" sought by the State and requested an exceptional sentence. Clerk's Papers (CP) at 40; *see* Verbatim Report of Proceedings (VRP) at 25. Blair argued that although he had pleaded guilty to two counts of theft of a motor vehicle, both of those vehicles were snowmobiles, and therefore not "motor vehicles" for purposes of RCW 9A.56.065. Blair asserted that his plea to the two counts was facially invalid.

---

[1] Because we affirm the Court of Appeals on procedural grounds, we do not reach the second issue presented.

In his briefing to the sentencing court, Blair requested to be "sentenced as if those were not motor vehicle convictions, which would result in a standard range of 17-22 months." CP at 40. At the sentencing hearing, Blair asserted that the correct standard sentencing range should be "22 to 29 months," based on an offender score of "seven." VRP at 28.

The State argued that Blair's offender score should be "nine" and the standard range should be "43 to 57 months." VRP at 24. The State opposed Blair's request for an exceptional sentence, arguing that for the sentencing court to "review another superior court judge's decision and be an appellate review court for that" would be inappropriate. VRP at 28; *see* CP at 58-61. The sentencing judge agreed with the State, reasoning as follows:

> What I'm being asked to do today is not just look at the documents that were filed at the time of the plea and sentencing but to actually make a determination that one of the elements alleged is missing, that it was not in fact a motor vehicle.
> I think that goes way beyond whether you could get that from just looking at the documents themselves on their face. And I think it may be an excellent argument for a restraint petition or some other venue, but I don't think it supports my going forward with an exceptional sentence today.

VRP at 31. At the sentencing hearing, the State announced that Blair requested to be sentenced under the drug offender sentencing alternative (DOSA) and that the State "[was] in agreement with that." VRP at 31. The calculation was based on

3

"[h]alf the midpoint of a standard range on [Blair's] charge." VRP at 31. The court accepted the recommendation and sentenced Blair to 25 months in custody and 25 months of community custody.

The Court of Appeals in an unpublished opinion affirmed. It noted that Blair challenged his offender score calculation seeking an exceptional sentence, and that "[v]iewed as an unsuccessful exceptional sentence request, Mr. Blair's appeal would necessarily fail." *State v. Blair*, No. 33911-4-III, slip op. at 3 (Wash. Ct. App. Dec. 1, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/339114_unp.pdf. The Court of Appeals nevertheless relied on the "common law 'sentencing error' exception to RAP 2.5(a)" to reach Blair's facial invalidity claim. *Blair*, slip op. at 3. It then rejected Blair's facial invalidity argument, reasoning that "whether [RCW 9A.56.065] applies to snowmobiles would require more than a simple look at the judgment and sentence and associated documents" and would instead require the sentencing court to engage in "construing a statute." *Blair*, slip op. at 5. The Court of Appeals did not reach the issue of whether snowmobiles were motor vehicles for purposes of RCW 9A.56.065.

ANALYSIS

Generally, the length of a criminal sentence imposed by a superior court is not subject to appellate review if the punishment falls within the correct standard sentencing range. RCW 9.94A.585(1); *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). And "[a]n appellate court will reverse a sentencing court's decision only if it finds a clear abuse of discretion or misapplication of the law." *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997); *accord State v. Aldana Graciano*, 176 Wn.2d 531, 537, 295 P.3d 219 (2013). It is error for the sentencing court to refuse "'categorically to impose an exceptional sentence below the standard range under any circumstances'" or to "operate[] under the 'mistaken belief that it did not have the discretion to impose a mitigated exceptional sentence for which [a defendant] may have been eligible.'" *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017) (second alteration in original) (quoting *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997); *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 333, 166 P.3d 677 (2007)).

Blair sought an exceptional sentence under RCW 9.94A.535(1). At the sentencing hearing, Blair appeared to agree with the State's calculation of the offender score as nine and the standard range as 43 to 57 months. Yet, Blair also argued that "the way [Blair's convictions are] counted *is not correct* and . . . the

5

*correct range would be 22 to 29* months." VRP at 28 (emphasis added). The Court

of Appeals concluded that RAP 2.5 generally precluded Blair from challenging the

offender score calculation. It reasoned, however, that because Blair at one point

explicitly challenged the correctness of the offender score calculation and the

standard range calculation, "the common law 'sentencing error' exception" to RAP

2.5(a) applied, citing *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), and

*State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999). *Blair*, slip op. at 3.

Unlike the Court of Appeals, neither the State nor Blair addresses this issue

in their briefing to us.[2] Blair's briefing in the trial court[3] as well as his arguments at

sentencing indicate that he raised the issue of facial invalidity of his two prior theft

of a motor vehicle (TMV) convictions for purposes of the offender score

calculation and that the strictures of RAP 2.5(a) are therefore not directly

applicable. Unlike *Blazina*, where the defendant never objected to the sentencing

condition, and *Ford*, where the defendant never objected to the classification of his

prior offenses as felonies, Blair objected at sentencing to the use of the two prior

---

[2] While it is unclear from the briefing he filed with this court, Blair's argument appears to be that half the midpoint of a standard range that Blair sought to be used to calculate his requested DOSA sentence would have resulted in a 12 and ¾ months sentence. *See* RCW 9.94A.662.

[3] *See* CP at 39 (Pet'r's Sentencing Br. (arguing that "[t]he plea to the snowmobile charges, as motor vehicles, is invalid on its face")).

convictions at issue on the grounds of facial invalidity. Blair's facial invalidity argument is therefore properly before this court.

As we have previously stated, "It is well settled that the State is not required to prove the constitutional validity of prior convictions used to calculate a defendant's offender score on a current conviction." *State v. Irish*, 173 Wn.2d 787, 789, 272 P.3d 207 (2012) (citing *State v. Ammons,* 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986)). The concept of facial invalidity has been most thoroughly examined in *In re Personal Restraint of Coats.*[4] In *Coats*, we said that "we have found errors rendering a judgment [facially] invalid *under RCW 10.73.090* only where a court has in fact exceeded its statutory authority in entering the judgment or sentence." *Coats*, 173 Wn.2d at 135 (emphasis added). That includes *collateral attacks* on convictions for nonexistent crimes. *In re Pers. Restraint of Hinton,* 152 Wn.2d 853, 857, 100 P.3d 801 (2004).

Blair argues that the facial invalidity standard should be the same standard applied to personal restraint petitions (PRPs), and that we should conclude that the sentencing court may look at "related law and documents associated with plea agreements" and engage in "some degree of statutory interpretation." Suppl. Br. of Pet'r at 9, 11. Conversely, the State argues that where we are reviewing a challenge

---

[4] 173 Wn.2d 123, 267 P.3d 324 (2011).

to a prior conviction at sentencing, *Ammons* and *Irish* should control and facial *constitutional* invalidity must be alleged. Suppl. Br. of Resp't at 7, 11. The State argues that for a sentencing court to engage in statutory interpretation at the sentencing hearing would unduly burden that court and result in minitrials focused on the prior criminal history, undercut the finality of long-settled judgments, and impede consistency in how prior convictions are treated. The Court of Appeals similarly reasoned that the question of whether the TMV statute "applies to snowmobiles would require more than a simple look at the judgment and sentence and associated documents" and would "require construing a statute," contrary to *Ammons*. *Blair*, slip op. at 5.

Whereas in *Irish* and in *Ammons* the challenge was to the constitutional validity of the prior sentences, here, Blair challenges his two prior convictions as convictions for "non-existent crimes." Suppl. Br. of Pet'r at 2. At oral argument before this court, counsel for petitioner analogized Blair's charges to being charged with possession of a controlled substance, arguing that if the controlled substance at issue were a bottle of Aquafina water, a charge with a nonexistent crime would result. Wash. Supreme Court oral argument, *State v. Blair*, No. 93995-1 (May 8, 2018), at 39 min., 5 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. But the flawed nature of this analogy is

8

quite apparent from the fact that the act of possession in and of itself is not criminal; the same cannot be said of theft. The issue, therefore, is not whether Blair was previously charged with and convicted of a nonexistent crime, but rather whether RCW 9A.56.065[5] applies, or whether Blair should have been charged with and convicted of theft under a different statute.

Blair relies on cases dealing with PRPs, primarily *Hinton, Coats*, and *In re Personal Restraint of Thompson*.[6] This line of cases is inappropriate given the procedural nature of the claim here. In regard to *Hinton*, we have explicitly stated that "[t]he facial invalidity we noted [there] is relevant only to the one year statute of limitation for personal restraint petitions but does not control determination of any other issues." *State v. Hall*, 162 Wn.2d 901, 908, 177 P.3d 680 (2008) (footnote omitted). In *Coats*, we prefaced our discussion of facial invalidity by stating that "[a]mong the peculiar characteristics of personal restraint petitions is the fact that they may be, and usually are, considered first by appellate courts, not by trial courts." *Coats*, 173 Wn.2d at 132. And in *Thompson*, the issue we addressed was whether "pursuant to RCW 10.73.090 the judgment and sentence

---

[5] The statute, unhelpfully, reads, in relevant part, "A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle." RCW 9A.56.065(1).

[6] 141 Wn.2d 712, 10 P.3d 380 (2000).

9

was valid on its face." *Thompson*, 141 Wn.2d at 718. In *In re Personal Restraint of*

*Stoudmire*, examined by both *Coats* and *Thompson*, we also said that "[a]lthough

this court has not discussed what 'validity on its face' means in terms of the time

limit in RCW 10.73.090, it has spoken in [*Ammons*] to what it means for a prior

conviction to be constitutionally invalid on its face in a sentencing proceeding,"

thereby drawing a clear procedural distinction. 141 Wn.2d 342, 353, 5 P.3d 1240

(2000).

The State argues, and we agree, that this distinction requires a defendant

challenging the use of a prior conviction at sentencing to show *constitutional* facial

invalidity, as *Ammons* and *Irish* would suggest. In a collateral attack, on the other

hand, facial invalidity may be statutory, constitutional, or jurisdictional. *See Coats*,

173 Wn.2d at 135-42 (discussing what makes a sentence *invalid* and the meaning

of *facial* invalidity separately). *Irish* and *Ammons* support our reasoning here. In

*Irish*, we stated that

> a criminal defendant generally has no right to contest the validity of a
> previous conviction in connection with a current sentencing. *Ammons,*
> 105 Wn.2d at 188. Requiring the State to make such a showing, or
> allowing the defendant to assert such a challenge, would turn the
> current sentencing proceeding into an appellate review of all of the
> defendant's prior convictions. *Id.* Consequently, a defendant seeking
> to challenge the validity of a prior conviction must exhaust established
> postconviction avenues of relief, such as a personal restraint petition.

*Irish*, 173 Wn.2d at 789-90. We have also expressed our concern about creating

minitrials over prior convictions in *State v. Wiley*, 124 Wn.2d 679, 686, 880 P.2d

983 (1994), *State v. Jordan*, 180 Wn.2d 456, 466, 325 P.3d 181 (2014), and

*Ammons*, 105 Wn.2d at 187-88. In *Ammons*, we stated that

> a prior conviction which has been *previously determined* to have been
> unconstitutionally obtained or *which is constitutionally invalid on its
> face* may not be considered. Constitutionally invalid on its face means
> a conviction which *without further elaboration* evidences infirmities
> of a constitutional magnitude.
>
> To require the State to prove the constitutional validity of prior
> convictions before they could be used would turn the sentencing
> proceeding into an appellate review of all prior convictions. The
> defendant has no right to contest a prior conviction at a subsequent
> sentencing. To allow an attack at that point would unduly and
> unjustifiably overburden the sentencing court. The defendant has
> available, more appropriate arenas for the determination of the
> constitutional validity of a prior conviction.

*Ammons*, 105 Wn.2d at 187-88 (emphasis added).

We further note that for purposes of determining the validity by a sentencing

court of a prior conviction, that court is generally limited to looking at the face of

the documents that were filed at the time of the plea and sentencing.[7] It is true that

in *Coats* we said that "*we* have not limited our review to the four corners of the

judgment and sentence," and that "*we* have considered only documents that reveal

---

[7] Here, Blair has not provided any plea statement forms but only the information filed in conjunction with the snowmobile charges and the corresponding felony judgment and sentence.

some fact that shows the judgment and sentence is invalid on its face because of legal error." *Coats*, 173 Wn.2d at 138-39 (emphasis added). But we have never held that the same considerations that apply when deciding a PRP apply when a sentencing court is presented with a challenge to a prior conviction, as is evident from the language in *Stoudmire*, quoted *supra*.

Blair argues that "as a matter of common sense, some degree of statutory interpretation is *always* necessary to determine whether charged conduct constitutes a crime."[8] Suppl. Br. of Pet'r at 11. While this makes some sense, the effect of accepting this approach would be to open up sentencing procedures to allow collateral attacks on facially valid prior convictions, a result our cases have rejected. The issue of whether theft of snowmobiles involves theft of motor vehicles under the statute does not raise a constitutional issue, and there is nothing constitutionally invalid about a conviction for theft of a motor vehicle as RCW 9A.56.065(1) provides.

---

[8] For this proposition, Blair cites to *Thompson*, where this court, and not the sentencing court, considered the date the statutory offense in question was enacted.

CONCLUSION

We affirm.

_____

WE CONCUR:

Fairhurst, C.J.                         Wiggins, J.

                                        Gonzalez, J.

Owens, J.

                                        Yu, J.

13

No. 93995-1

GORDON McCLOUD, J. (concurring)—Sentencing reform came to Washington in 1981 with the adoption of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. Its presumptive sentences and statutory guidelines for departures from those sentences were designed to make sentencing more predictable, clear, and uniform—and hence more fair—across the state.

This court upheld the SRA against a variety of constitutional challenges a few years later in *State v. Ammons*, 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796 (1986). One of the constitutional challenges considered was the fact that the legislature did not place the burden on the State to prove the constitutional validity of prior convictions used in the sentencing calculation. This court rejected that challenge; we held that "the State does not have the affirmative burden of proving the constitutional validity of a prior conviction before it can be used in a sentencing proceeding." *Ammons*, 105 Wn.2d at 187-88.

1

But we didn't stop there. We continued by saying that since prior convictions play such an important role in determining current sentences based on the SRA's guidelines, there were certainly ways to test the validity of those prior convictions. First, we held that "a prior conviction which has been previously determined to have been unconstitutionally obtained" cannot be used to enhance a current sentence. *Id.* (citing *In re Pers. Restraint of Bush*, 26 Wn. App. 486, 497-98, 616 P.2d 666 (1980), *aff'd*, 95 Wn.2d 551, 627 P.2d 953 (1981); *United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967)). Next, we held that a prior conviction "which is constitutionally invalid on its face may not be considered" in determining a current sentence. *Id.* Finally, we concluded by explaining, "Constitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude." *Id.* at 188.

Thus, under *Ammons*, sentencing courts clearly retain the power and the duty to determine whether a prior conviction is "invalid on its face" and, hence, "may not be considered." *Id.* at 187-88.

I acknowledge that *Ammons* focused on constitutional invalidity. But that was because that was the only challenge that was presented there.

2

The majority, however, takes this happenstance of the particular challenge that was raised in *Ammons*, and the *Ammons* discussion about how to raise such constitutional challenges, as a decision to preclude any other types of challenges. Majority at 10 ("The state argues, and we agree, that this distinction requires a defendant challenging the use of a prior conviction at sentencing to show *constitutional* facial invalidity, as *Ammons* and *Irish*[1] would suggest."). This is incorrect. The majority's decision to take challenges to the statutory invalidity of a prior conviction out of the trial court's hands not only lacks support in *Ammons*; it is completely unprecedented. And it creates a ridiculous anomaly: under the majority's approach, the criminal defendant has the right to raise facial challenges to his or her prior convictions on statutory and jurisdictional grounds in a postconviction personal restraint petition, but not at the prejudgment sentencing itself. *Id.* ("In a collateral attack, on the other hand, facial invalidity may be statutory, constitutional, or jurisdictional." (citing *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 135-42, 267 P.3d 324 (2011))).

The majority also takes another unprecedented and ill-advised step in supposed reliance on *Ammons*. The majority holds that trial courts cannot engage in "'statutory interpretation'" (majority at 12 (quoting Suppl. Br. of Pet'r at 11)) when

---

[1] *State v. Irish*, 173 Wn.2d 787, 272 P.3d 207 (2012).

presented with challenges that are clear from the face of the appropriate documents at sentencing.

This misreads *Ammons* and betrays a lack of trust in the ability of trial court judges to conduct statutory analysis. Actually, under *Ammons*, sentencing courts *retained* the power to make decisions about the validity or invalidity of prior convictions when presented with the proper documents—no matter how difficult it might be to engage in such constitutional analysis. *Ammons*, 105 Wn.2d at 190. And since that time, we have clearly ruled that the proper documents to consider when determining the validity or invalidity of a conviction on its "face" include—at least in the most restrictive personal restraint petition (PRP) context—not just the judgment but also the information, the statement of defendant on plea of guilty, and certain other regularly filed materials. *Coats*, 173 Wn.2d at 139-40. The majority now asserts that not even these documents can be considered at the sentencing itself.

*Ammons* was designed to simplify things at sentencing. It allowed criminal defendants to challenge the validity of prior convictions used to enhance the current sentence at the sentencing itself, where the defendant was represented by a lawyer, using the "face" of the prior conviction documents.

4

The majority's decision, in contrast, is anything but simple. It directs trial court judges, at sentencing, to determine constitutional validity but not "statutory . . . or jurisdictional" validity of prior convictions. It directs those judges to consider only one of the documents that a PRP judge can consider in determining the facial validity of a prior conviction but not any of the other documents that our PRP cases hold are admissible and relevant to the facial validity question. And it directs the criminal defendant who is not able to follow these confusing advisements at sentencing, with the benefit of counsel, to file his or her challenge in a PRP. PRPs, of course, occur later in the process, take time, and are proceedings at which the criminal defendant generally lacks counsel.

This is not the simplicity that *Ammons* promised. This is a complex disaster that most criminal defendants will not be able to navigate on their own. Our case law and common sense compel the conclusion that the sentencing court must be able to consider sentencing challenges that are clear from the face of prior conviction documents, including those involving statutory or constitutional analysis, at sentencing. Sentencing is the time when the criminal defendant—no matter how rich or poor—has the benefit of counsel, and the matter can be resolved expeditiously in a single proceeding.

5

In this case, however, the defendant did not provide the trial court (or this court) with sufficient documents to support his claim. He argues that he has two prior convictions for "theft of a motor vehicle" that were used against him at sentencing, that the statutory phrase "motor vehicle" does not include snowmobiles, and that two of his prior convictions were for theft of snowmobiles. But he has not provided sufficient documents to show that the prior convictions were based on theft of snowmobiles. As the Court of Appeals aptly observed, "Although Mr. Blair has submitted the information filed against him in the 2011 TMV [theft of a motor vehicle, RCW 9A.56.065] cases, he has not provided a plea statement form, so we do not know what facts were established in that proceeding." *State v. Blair*, No. 33911-4-III, slip op. at 5 (Wash. Ct. App. Dec. 1, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/339114_unp.pdf.

I therefore respectfully concur.

_____
Gordon McCloud, J.

Stephens, J.

Madsen, J.

7